UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 04-CR-57-TCK |
| MARK E. SELLS, | ) ) ) |
| Defendant. | ) |

**OPINION AND ORDER**

Before the Court is the Motion to Vacate Conviction in Case No. 04-CR-57 Pursuant to 28 U.S.C. § 2255, filed by Mark E. Sells ("Sells"), and the Motion to Dismiss Sells' Motion to Vacate Conviction, filed by the United States of America. Docs. 55, 52. In his Motion to Vacate, Sells asserts that the search warrant used to procure the destructive device he was convicted of possessing was invalid, and that he never knowingly or voluntarily waived his rights to appeal, including any rights pursuant to new Supreme Court law, such as *McGirt v. Oklahoma*, 591 U.S. ___, 140 S.Ct. 2452, 207 L.Ed.2d 985 (2020). In its Motion to Dismiss Sells' Motion to Vacate, the United States contends that Sells is ineligible for relief under §2255 because he is no longer in any form of federal custody; and his motion falls squarely within the post-conviction rights waiver in his plea agreement. The United States asserts that enforcing the waiver would not result in a miscarriage of justice because the *McGirt* claim is meritless, and both this Court and the Tenth Circuit have already rejected his remaining Fourth Amendment claim.

**I. Background**

In 2004, Sells shot two .223-caliber bullets into his parents' headboard while they were sleeping. *United States v. Sells*, 463 F.3d 1148, 1151 (10th Cir. 2006). His father reported to

deputies that his son had threatened his life the previous day, and warned them that the son had numerous firearms at his own residence. *Id.* at 1152. After surveillance revealed Sells carrying a deer rifle, a flak jacket and an AR-15 with a scope, officers obtained a Tulsa County search warrant for Sells' home, which described the items to be searched for and seized as "any .223-caliber Firearm or rifle, .223-caliber ammunition, footwear, clothing, any other related fruits, instrumentalities and evidence of the crime." *Id.*

When officers executed the warrant, they found a loaded .223-caliber AR-15 rifle 'right off the bat.'" Subsequently, they found a hidden compartment containing thousands of rounds of ammunition, including .223-caliber ammunition. *Id.* Officers also spotted a pipe bomb in the compartment, and called ATF to defuse it. *Id.*

After a federal grand jury charged Sells with possession of the pipe bomb, he moved to suppress all evidence seized from his home, arguing that the warrant was overbroad and that the officers had improperly conducted a general search. *Id.* at 1153. The district court granted the motion in part but—pursuant to the plain view doctrine—denied it with respect to the seizure of the .223 rifle and ammunition specified in the warrant and redacted warrant, as well as the shotgun shells, pipe bomb and related items. *Id.*

Subsequently, Sells entered a conditional guilty plea in which he reserved his right to appeal the Court's denial of his suppression motion, but explicitly waived his "right to collaterally attack the conviction and sentence pursuant to 28 U.S.C. §2255, except for claims based on ineffective assistance of counsel which challenge the guilty plea or [the post-conviction rights] waiver." Doc. 19. The Court sentenced him to 30 months in prison. 463 F.3d at 1153. Sells also received a 35-year state sentence for shooting with intent to kill, and a consecutive eight-year state sentence for assault and battery with a dangerous weapon.

On direct appeal, the Tenth Circuit ruled that severance was appropriate because the valid portions of the warrant permitting seizure of firearms and ammunition made up the greater part of the warrant. 463 F.3d at 1160. Accordingly, it affirmed this Court's ruling upholding the seizure of the .223-firearm and ammunition under the warrant, as well as the plain view seizure of the pipe bomb and related items. *Id.* at 1161. The appellate court also affirmed the District Court's finding that the searching officers did not engage in "indiscriminate rummaging or hours of ransacking . . . that would require the 'extreme remedy of total suppression." *Id.* at 1162. Sells subsequently petitioned for a writ of certiorari, which the Supreme Court denied on February 20, 2007. *Sells v. United States*, 127 S. Ct. 1301 (2007).

Citing 18 U.S.C. §2255, Sells now moves to vacate his federal conviction, arguing that the Supreme Court's decision in *McGirt* rendered invalid the state search warrant that led to his federal conviction and reasserting his argument that the search of his home by officers exceeded the scope of the warrant and constituted a general search. Docs. 50-55. The United States argues that Defendant is ineligible for relief under § 2255 because he is no longer in custody, nor is he on parole or supervised release; and Defendant's motion falls squarely within the collateral attack waiver in his plea agreement.

**II. Analysis**

    **A. Whether Sells is Eligible for Relief Under §2255**

Relief under § 2255 is available only to "a prisoner in custody under the sentence of a court established by an Act of Congress." 28 U.S.C. §2255(a). A habeas petitioner is deemed to be "in custody" and eligible to file a §2255 motion if—at the time he files the motion—he is either incarcerated or on parole or supervised relief. *United States v. Fabiano*, 42 Fed. Appx 408, 411 (10th Cir. July 18, 2002). However, where—as in this case—the petitioner's incarceration has been

3

completed, his supervised release has been terminated and he has been released from custody, "there is no longer any case or controversy that can be remedied through a §2255 proceeding." *Nevarez-Barela v. United States*, 2021 WL 517227 (D. N.M.) 2/11/21 (citing *Spencer v. Kemna*, 523 U.S. 1, 7-8 (1998)).  Because of this, Sells is ineligible for relief under §2255.

### B.  The Effect of the Collateral Attack Waiver in Plea Agreement

"[T]he waiver of collateral attack rights brought under §2255 is generally enforceable where the waiver is expressly stated in the plea agreement where both the plea and the waiver were knowingly and voluntarily made." *United States v. Cockerham*, 237 F.3d 1179, 1183 (10th Cir. 2001). The only exception to this rule is where the movant asserts claims of ineffective assistance of counsel or challenges the validity of the plea or waiver. *Id.* at 1187. The Supreme Court has stated that "[W]hen the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to *whether the underlying plea was both counseled and voluntary.*" *Id.* (quoting *United States v. Broce*, 488 U.S. 563, 569).

Accordingly, when a defendant waives his right to collaterally attack his conviction and sentence, but later files a §2255 petition, the Court must consider (1) whether the disputed claim falls within the scope of the appellate and post-conviction waiver; (2) whether the defendant knowingly and voluntarily waived his appellate and post-conviction rights and (3) whether enforcing the waiver would result in a miscarriage of justice. *United States v. Vera*, 674 F.3d 1214, 127 (10th Cir. 2012).

In this case, Sells pled guilty pursuant to a plea agreement in which he retained his right to appeal the Court's denial of his suppression motion, but explicitly waived his right to collaterally attack his conviction or sentence pursuant to §2255, except for claims based on ineffective

assistance of counsel. Doc. 19 at 7. He signed and dated the form just below his collateral attack waiver, after expressly acknowledging that his counsel had explained his post-conviction rights and that he voluntarily waived those rights. Neither of the claims in his §2255 motion alleges ineffective assistance of counsel. Accordingly, his motion falls squarely within his post-conviction rights waiver. The Court concludes that Sells knowingly and voluntarily waived those rights.

The Court further concludes that enforcement of the waiver will not result in a miscarriage of justice, because Sells' underlying arguments lack merit. First, his contention that the executing officers violated his Fourth Amendment rights by conducting an overbroad or general search was previously raised by him and rejected by this Court, the Tenth Circuit and the Supreme Court, which all upheld the seizure of the .223-calibur rifle, ammunition, pipe bomb, and other bomb-making materials.

Sells argues that evidence seized from his house should have been suppressed even if the search of his home was not rendered retroactively unconstitutional by *McGirt*. The Fourth Amendment does not expressly preclude the use of evidence obtained in violation of its provisions. However, courts have adopted a rule by which such evidence can be suppressed from use in criminal trials. *Arizona v. Evans*, 514 U.S. 1, 10 (1995); *Herring v. United States*, 555 U.S. 135, 139 (2009). The exclusionary rule "operates as a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect.'" *Id.* (quoting *Davis v. United States*, 564 U.S. 229, 237 (2011). Accordingly, "the exclusionary rule does not apply when the police conduct a search in 'objectively reasonable reliance' on a warrant later held invalid," because "the error in such case rests with the issuing magistrate, not the police officer. *Davis v. United States*, 564 U.S. at 238-39 (quoting *United States v. Leon*, 468 U.S. 897, 922 (1984)).

At the time of the 2004 search, everyone involved—from law enforcement officers to the issuing magistrate—operated under the mistaken belief that the Creek and Cherokee reservations had long been disestablished. *McGirt v. Oklahoma*, 140 S.Ct. 2452 at 2485 (2020) (acknowledging that Oklahoma "maintained unquestioned jurisdiction for more than 100 years" over land encompassed by the Five Tribes' prior holdings). "In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient . . . Penalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations." *United States v. Leon*, 468 U.S. 897, 921 (1984).

In this case, the state search warrant was executed more than a decade before *McGirt* was decided. Moreover, Sells offers no evidence that the officers acted in bad faith in executing the warrant. Accordingly, the Court concludes that even if the warrant was issued without jurisdiction, the exclusionary rule is inapplicable.

### III. Conclusion

For the foregoing reasons, the United States' Motion to Dismiss Defendant's §2255 Motion is hereby granted.

ENTERED this 23rd day of November, 2021.

TERENCE C. KERN
United States District Judge